BUCKSPORT & E. R. R. CO. et al. v. EDINBURGH & SAN FRANCISCO REDWOOD CO., Limited.

(Circuit Court of Appeals, Ninth Circuit. July 15, 1895.)

No. 216.

1. CORPORATIONS—RIGHTS OF STOCKHOLDERS—ENJOINING MANAGEMENT.

A lumber company on the one part, and certain individuals on the other, owned together a large tract of inaccessible timber land, and the latter party also owned certain adjoining tracts. By agreement they joined in organizing a railroad company and building a road to reach the lands, each party taking half the stock therein. Afterwards the corporation sold to the individual party its interest in the timber. The purchasers exhausted all the timber within reach of the road, and, being in the majority in the directory of the railroad company, passed a resolution authorizing an extension of the road to reach timber lands owned by them alone, and appropriating the money in the treasury for that purpose. The rate agreed on for carrying lumber from the new tract was the same that was originally fixed by both parties. The road was useless, except for transporting the timber, and would be entirely worthless without the extension. *Held*, that the lumber company, as a stockholder in the railroad company, was not entitled to enjoin the proposed extension on the ground that it was solely in the interest of the individual party, as owner of the timber land, and against the interest of the stockholders in the railroad company.

2. SAME—CONSTITUTIONAL LAW—CARRIERS.

The provision in the constitution of California (article 12, § 18) forbidding an officer of a company to engage "in the business of transportation, as a common carrier of freight or passengers over the works owned, leased, controlled, or worked by the company," does not apply to the act of an officer of a railroad company in causing his own freight to be transported over the company's road.

Appeal from the Circuit Court of the United States for the Northern District of California.

This was a bill by the Edinburgh & San Francisco Redwood Company, Limited, against the Bucksport & Elk River Railroad Company and others to procure an injunction restraining defendant company from building an extension of its road. An injunction was granted by the circuit court, and the defendants appeal.

S. M. Buck and F. A. Cutler, for appellants.

Charles Page, for appellee.

Before GILBERT, Circuit Judge, and KNOWLES and BELLINGER, District Judges.

BELLINGER, District Judge. The complainant, the appellee company, is the successor to all the rights and interests of the Cali-

fornia Redwood Company, Limited, a Scotch company, by purchase, on the liquidation of that company for insolvency, at the suit of creditors. This Scotch company, at the time of its liquidation, was the owner of the entire capital stock of another California redwood company, a domestic corporation, which latter corporation owned sawmills and vessels and large bodies of redwood-timber lands on Elk river and its branches, in Humboldt county, Cal., and was engaged in the lumber business on a large scale. The capital stock of the domestic redwood company so held by the Scotch redwood company constituted the property, rights, and interests to which the complainant succeeded on the liquidation of the Scotch company. The defendant W. H. Carson and one Dolbeer were also large owners of redwood-timber lands adjacent to the lands of the California Redwood Company, and had other interests in such lands in common with that company. To promote their common interests, it was agreed between the company, through its general manager, and Dolbeer and Carson, to build a railroad from Humboldt Bay to and up Elk river and its branches, to reach the redwood-timber lands of the parties, and of others in that vicinity. In pursuance of this agreement, the defendant the Bucksport & Elk River Railroad Company was organized, and its stock subscribed for and held in equal amounts by the two parties,—Dolbeer and Carson of the one part and the redwood company of the other. The enterprise contemplated was the building of about 30 miles of road, and the articles of incorporation of the company thus organized specify a line running from the forks of said Elk river, up and along the North Fork thereof, to the east line of township 4 N., of range 1 E., Humboldt base and meridian, as a part of the road which the company is incorporated to build. The board of directors of the railroad company consisted of five members. Of these, three were elected in the interest of the California Redwood Company, and two, including William Carson, in the interest of Dolbeer and Carson. This continued from the organization in July, 1884, up to February 9, 1886. In the meantime the company contracted with the Elk River Mill & Lumber Company to complete its road to a point where the latter company proposed to erect a large sawmill during 1884, transport the machinery therefor, and thereafter haul all the lumber manufactured at such mill to Humboldt Bay for $1.50 per 1,000 feet, board measure. The work was begun and carried forward under the management of the manager of the California Redwood Company, who was a director in the railroad company. Surveys were made for lines up the North Fork of Elk river, and up some tributary streams to the south of the main stream. In 1886, following the insolvency of the Scotch company, the work of building was stopped by the refusal of the managing directors of the railroad company, who were in the interest of, and presumably subject to, the direction of the California Redwood Company, to continue it. Thereupon, Dolbeer and Carson advanced $36,000, necessary to the completion of the line agreed to be built in the contract with the Elk River Lumber Company, which was subsequently repaid them out of earnings of the company. In consequence of the responsibility thus assumed by

Dolbeer and Carson, the membership of the board of directors of the Bucksport & Elk River Railroad Company was changed by the resignation of two members of the majority, whose places were filled in conformity with the wishes of Dolbeer and Carson. The road was completed to the mills of the Elk River Lumber Company, and the product of such mills carried to Humboldt Bay, but without making any profit on such freight. In October, 1886, Dolbeer and Carson entered into a contract with the California Redwood Company by which they purchased the entire one-half interest of the company in the redwood timber suitable for lumber upon the lands owned jointly by the parties, and all the timber on lands owned by the company, within the watershed of what is known as "Tom's Gulch," within the district tapped by the company's road. There were 800 acres of land owned jointly, and 400 acres exclusively owned by the company. The price agreed to be paid was $1.50 per 1,000 feet, board measure, for the logs taken from this land. Under this contract, Dolbeer and Carson, between 1887 and 1892, shipped 80,000,000 feet of logs, for which they paid freight to the railroad company at the rate of $2 per 1,000 feet,—a total of $160,000. Before the change in the directory of the company, some $20,000 had been expended towards an extension of a branch of the road up Tom's Gulch, which branch was completed under the new management. Having exhausted Tom's Gulch, Dolbeer and Carson, in 1892, made a second contract with the redwood company, in terms like the former, for the timber in Clapp's Gulch, and to reach this timber a branch road about one mile in length was built. This source of timber supply will be exhausted during this year. Anticipating this fact, the company, by a majority vote of its directors, on May 5, 1892, decided to apply the money on hand, amounting to about $24,000, to making extensions of the road to reach new sources of timber supply, and on the 12th of the following December, in pursuance of this policy, formally authorized the building of extensions up Clapp's Gulch and up the North Fork of Elk river. In view of this action, the complainant corporation, having in May, 1892, caused a transfer to itself of the shares of stock of the Bucksport & Elk River Company standing in the name of the California Redwood Company, began this suit to restrain the defendant company from building the extensions proposed, and particularly from building the extension up the North Fork of Elk river. Upon the hearing, the court granted the prayer of the complainant, subject to the right of Carson and the stockholders co-operating with him to build the extensions at their own expense. From the decree so rendered, this appeal is taken.

The court below concluded, from the fact that Carson and Dolbeer own large bodies of timber land on the North Fork of Elk river, and are large manufacturers of lumber on Humboldt Bay, and that the extension up this fork will enable them to transport their logs to their mills, that Carson, through his control of a majority of the board of directors of the railroad company, proposes to use the road for his own private interests, regardless of the real interests of the road and of its stockholders, and that it is the duty of the court to restrain

the directors of a corporation "from controlling the corporate property for the enhancement of their personal and private interests." Furthermore, the court found that Dolbeer and Carson belonged to a syndicate which had limited the lumber product of its members, and that from all the facts there was no prospect that the road as extended would be profitable to the stockholders; but it declined to consider the question of probable profits as one that should control the decision. The uncontroverted facts as to the business and prospects of the road are "that the timber accessible to the road is practically exhausted"; that the road will become valueless unless another source of supply is reached; and that the proposed extension will reach "large bodies of valuable timber, which will give the road business for years to come." The court below was of the opinion that it might be conceded that the road, as now existing, will soon be valueless, and that by the proposed extension such large bodies of valuable timber will be reached as will make it, if operated to its full capacity, profitable to its stockholders; but that, notwithstanding this, the private interests of Dolbeer and Carson to be served by such extension, the limitations they are under to the lumber trust, the fact that they are the only present patrons of the road, and the conclusion therefrom that there is no present prospect that the investment would be profitable to the stockholders, require the intervention of the court by its injunction to prevent such extension. In short, the conclusion is reached that the case is within the established principle which precludes a person from acting for himself and at the same time for another in respect to the same matter, when the two interests are conflicting.

The Bucksport Railroad Company was organized to build the road in question, and this power was assumed, not merely as a provision for contingencies that might arise in the future, but as one fairly within the main scope of the organization. It was a vital part of the enterprise, the object of which was to reach with a road valuable redwood-timber lands of the parties on both forks of Elk river. The stockholders of the complainant were the organizers and beneficiaries of the California Redwood Company of California. That company was largely interested in timber lands, and in mills and vessels engaged in the lumber manufacture and trade, which it carried on at the time the Bucksport & Elk River Railroad Company was incorporated. The new enterprise was intended primarily to serve the interests of the California Redwood Company and Dolbeer and Carson as a means of outlet for their own timber,—to carry their own freight and supply their own mills. It was, in effect, a private road for the private use of the two interests that combined to organize the company that built it. At least, it was mainly for such use that the venture was gone into. Evans, one of the original stockholders in the California Redwood Company, and its manager in 1884 and 1885, testified, as a witness for defendants, that the railroad was built for the purpose of hauling logs for Dolbeer and Carson and the California Redwood Company. Carson testifies that he was first approached by parties in the California Redwood Company with the proposition to incorporate the railroad company, and that their prop-

osition was that, if Dolbeer and Carson would take half the stock in such a company, they would furnish more than one-half its business. Bell, a witness for complainant, testified that, if Dolbeer and Carson had not furnished any freight for the road, the amount of profit left to the railroad during the seven years it has been operated would have been "on the wrong side." As it turned out, the redwood company furnished but little, if any, business for the road; having sold its timber to Dolbeer and Carson, to be by them cut and hauled over it. It is not a ground of complaint that the road is to be used to haul the freight of Dolbeer and Carson, nor that, being so used, Dolbeer and Carson do not concede to the minority in the board the right to fix the rate of freight to be paid by them. Upon the principle contended for by complainant, the road cannot be used by one of the two parties concerned in building it, although it was intended for both, for the reason that the management, including the right to fix rates of freight, must necessarily be in the control of one.

The complainant also contends that the defendants are forbidden by section 18, art. 12, of the constitution of California, to have an interest as a carrier in the freight transported. That provision forbids an officer of a company to engage "in the business of transportation as a common carrier of freight or passengers over the works owned, leased, controlled or worked by the company," etc. Such officer is prohibited from using the road under his control to engage in the business of common carrier on his own account. There is no relation between such business and the act of an officer of a company in carrying his own freight over the company's lines. In one case he takes the company's place as a carrier and diverts its earnings to himself; in the other, he originates business for the company, and becomes himself a payer of tolls to it.

The North Fork extension was presumably one of the inducements for the undertaking in question. It may have been the controlling inducement so far as Dolbeer and Carson are concerned, since, in addition to their joint interest with complainant in lands to be reached by the proposed extension, they own large bodies of timber further up this fork, ultimately to be reached by the road. Good faith requires that the parties shall keep to their undertaking until its substantial ends are accomplished. In no case can the court enjoin the building of a road because of what is proposed upon the one side or feared upon the other as to the rates of toll that will be adopted when the road is built. Carson is bound to the exercise of good faith in this, as in all other matters relating to his office as director. The contention of the complainant that his relation to the road as a patron disqualifies him from fixing a rate of toll is an attempt to apply a general rule that obtains where a party, as the agent of others, attempts to deal with himself, to a case not within the rule. Such rule cannot, in the nature of things, be applied with reference to matters of legitimate and necessary corporate administration. These are matters that compel action, and the obligation to act is devolved upon the majority. It is the abuse of the right, and not the exercise of it, that furnishes the occasion for legal remedies.

There is nothing in this case that tends to show bad faith on the part of the defendants. It is proposed to build an extension of road four miles in length up the North Fork of Elk river, in accordance with the object for which the company was incorporated. The cost of this road is variously estimated. One witness, a surveyor, testifies that he has made a careful estimate of the cost, which he places at a little below $44,000, not including rolling stock, with which the company is presumably supplied. There has already been considerable work done on the line,—$5,800 having been expended therefor. This first extension will make available some 300,000,000 feet of logs, without further expense than the construction of a mile and a half of what is called a "donkey-engine road," which Dolbeer and Carson propose to construct at their own expense. The extension is to be built with earnings of the road on hand and advances to be made by Dolbeer and Carson, for which they are to look only to earnings for reimbursement. The net earnings of the road have averaged $3\frac{1}{2}$ per cent. per annum, and this is referred to for the purpose of showing that the extension will be a poor investment. In this estimate the cost of building the road into Tom's Gulch and of repairing and maintaining it are included. This cost has been exceptionally great, due to the fact that there were two or three heavy freshets, to which that section is especially exposed, that greatly damaged the road. This section is exceptional, also, in respect to grades, some of them being as much as 300 feet in a mile. The proposed extension is free from both of these difficulties. The admitted fact is, as already stated, that the present source of freight supply is practically exhausted, and the road will soon be without business, and valueless. The net earnings from business created by the proposed extension, in determining the advisability of it, should not be estimated with reference to the cost of the road as now built. That is beyond recovery. The estimate of net earnings at $3\frac{1}{2}$ per cent. per annum, made by complainant to show that the proposed branch is a poor investment, and is therefore prompted by bad faith, makes no account of the benefits that have accrued to the stockholders in disposing of timber owned by them. The California Redwood Company sold its timber to Carson and Dolbeer at the rate of $1.50 per 1,000 feet. The road was built to enable the parties to realize on this timber, or its manufactured product. By its means the California Redwood Company sold timber upon about 1,000 acres owned by it in Tom's Gulch and Clapp's Gulch, and the undivided half of the timber upon more than 800 acres in Tom's Gulch owned jointly with Dolbeer and Carson. It must have realized a large amount of money from these sales, and it is shown by the testimony of complainant's witnesses that the road has increased the value of this timber land from $30 per acre to $90 per acre. The complainant omits to credit the railroad enterprise with this benefit, although it is apparent that such credit is necessary to a correct estimate of the value of the road to its owners as an investment.

The complainant is willing that the road shall be extended, provided a freight rate to be paid by Dolbeer and Carson can be agreed

upon beforehand agreeable to it.　In the brief filed in its behalf, it is stated that complainant is opposed to the extension of the road "unless a freight rate be agreed upon which shall furnish the company some adequate return for the moneys to be invested, and it has objected strenuously to the extension upon any other condition." As already stated, the court is not required by the justice of the case, nor authorized, to pass upon the adequacy of the $2 per 1,000 feet freight rate in question.　Nevertheless, so far as appears, such rate is not inadequate.　It was the rate adopted when the California Redwood Company controlled the board of directors of the railroad company.　That rate was adhered to, without objection or complaint, for many years.　It was proposed by the officer who represented complainant's interests.　The haul over the proposed extension will be but little longer than that from Tom's Gulch.　The witnesses for the complainant say that this increased haul increases the cost of transportation 15 cents per 1,000 feet.　But, admitting this to be true, for this increased haul complainants, demand, not 15 cents, but $1.　The extension will have better grades than the Tom's Gulch extension, and, while portions of the latter have been frequently washed away by freshets, the proposed road will be free from such danger, and will be maintained and kept in repair at a much less cost.　One witness for the defense testified that it will cost less to haul logs from the North Fork than it costs to haul out of Clapp's Gulch, owing to the excellence of the timber on the North Fork and the little waste there is in sawing it into lumber.　It is probable that these advantages in favor of the proposed road will compensate for the increased length of haul over it; and, besides this, the $2 rate was established many years ago, and it is common knowledge that wages and supplies of all kinds are lower now than then, and that fares and tolls throughout the country have been correspondingly reduced.　Carson testifies that if he was not interested in the road it would be cheaper for him to get his logs from other sources of timber supply owned by him than by the proposed road; and he testifies, with reference to his relations with the trust, that half his product goes to foreign markets, while the limitations of the trust apply only to the San Francisco market, and that this does not affect the output of his mills, which run right along, the lumber being stacked in the yard.　There is nothing in the case that conflicts with these statements or renders them improbable.

The entire road to be operated when the proposed extension is built will be about 12 miles.　The complainant, through a trust company, owns, jointly with Dolbeer and Carson, more than 2,600 acres of timber lands and nearly 1,000 acres of stump land, besides some land of which it has the entire beneficial interests.　Its own witness testifies, and the fact is not questioned, that a road is necessary to make these lands available, and would increase their value threefold.　When, for these advantages, it is considered that complainant is only required to risk its interest as a stockholder in about $24,000 of money on hand belonging to the railroad company; that Dolbeer and Carson are to advance what more is required, and take their chances for reimbursement on the earnings of the road;

that the entire investment as now made will be lost without the extension,—it is difficult to avoid the conclusion that the complainant does not wish to prevent the proposed extension, otherwise than as a means to force Dolbeer and Carson to concede in advance a rate of freight for their business satisfactory to itself, and one-half greater than that in force by the agreement of its agents during all the years the road has been operated. It is enough that the defendants, in what is proposed, are merely carrying out the objects for which the company was organized, and are in the legitimate exercise of the authority conferred upon them, as directors of the company, to determine its policy and manage its business. The decree appealed from is reversed, and the cause will be remanded to the court below, with directions to dismiss the bill of complaint.